IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EDWARD A. DUMONT,

                Plaintiff,                OPINION AND ORDER

v.

                                                  14-cv-520-wmc

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Edward A. Dumont seeks judicial review of a final decision of defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, which denied his application for Social Security Disability Insurance Benefits and Supplemental Security Income. On September 21, 2015, the court heard oral argument on plaintiff's contentions that: (1) the administrative law judge ("ALJ") failed to give proper weight to "treating" physician Dr. Lynn Quenemoen's opinion; (2) the Appeals Council failed to consider new and substantial evidence in the form of a report by Dr. Joseph Hebl, dated June 6, 2013; and (3) the ALJ failed to consider the negative side effects of Dumont's prescription medications. For the reasons provided below, the court will remand for further consideration of Dumont's use of prescription medications and its side effects on his residual functional capacity ("RFC").

BACKGROUND

Dumont claims a disability onset date of May 1, 2010, based on degenerative disc disease and low back / hip pain. The medical record reflects that Dumont had lumbar laminectomy, discectomy surgery in 2002. (AR 330.) Dumont has not worked since 2008. Beginning in May 2011, Dumont began seeking treatment for low back pain and

management of that pain. Among other things, an MRI taken on May 26, 2011, disclosed the following:

> [D]isc space narrowing is apparent from L3-4 level through L5-S1 level. . . . The L3-4 level shows focal disc protrusion posterolaterally on the left. This causes minor narrowing of the lateral recess. No deflection of the nerve roots is apparent. There is minimal narrowing of the nural exit foramen on the left. The L4-5 level shows mild diffuse disc bulging with left-sided predominance. Depth of the protrusion is approximately 7 mm. Nerve roots appear to exit freely. The L5-S1 level shows a small midline disc protrusion. There is superimposed mild diffuse disc bulging. There is minimal contact involving the L4 nerve root on the right without posterior deflection.

(AR 237.)

In response, Mark T. Seidelmann, M.D. administered epidural steroid injections in June 2011 and again in November 2011. (AR 238-41, 247, 401.) During this same period, Dumont sought follow-up treatment from Robert A. Wolfe, M.D. Dr. Wolfe described "diffuse [pain] across upper buttocks," and also noted Dumont's use of epidural shots and hydrocodone, which appeared to provide relief from pain, but also made him feel "numb." (AR 227, 293, 395, 403.) Also, during this period, Dumont was treated for alcohol withdrawal, including hospitalization, which he attributed to self-medicating for back pain. (AR 260.)

Critical to one of Dumont's challenges, L.S. Quenemoen, M.D. ("Dr. Q"), completed a questionnaire in early January of 2012, which limited Dumont to lifting and/or carrying occasionally up to 10 pounds, rarely up to 20, and never over 20 pounds.

(AR 216.)[1]  In particular, Dr. Q's physical exam notes indicate that:  Dumont's "pain symptoms [were] consistent [with] diskogenic pain"; he was "unable to stand erect or back bend on physical exam due to back pain"; and he was "unable to maintain flexed trunk position or repetitively forward bend on physical exam due to back pain."  (AR 216.)  Dr. Q also noted that Dumont could:  sit for up to 4 hours in an 8-hour work day, for 30 minutes at a time; stand for up to 2 hours in an 8-hour work day, for 15 minutes at a time; and walk for up to 2 hours in an 8-hour work day, also limited to 15 minutes at a time.  (AR 217.)  Finally, Dr. Q stated that the limitations found on Dumont would last more than 12 months, and that he would miss two or more days per month because of these impairments.  (AR 221.)

In his electronic record notes, dated January 4, 2012, Dr. Q also explains that he was seeing Dumont at the request of Dr. Robert Wolfe for a social security disability evaluation.  Dr. Q reviewed Dumont's treatment history, overall health, and conducted a physical examination.  Dr. Q further reviewed a lumbar MRI, dated 5/26/2011, which showed, among other things, "fairly significant degenerative disk changes with desiccation and narrowing at L3-L4, L4-L5 and L5-S1.  At the L5-S1 level, he has diffuse disk bulge and osteophyte complex with a small central protrusion."  (AR 225.)  Finally, Dr. Q concluded by stating that he: "think[s] it would be very difficult for him to maintain a job in a competitive job market at this time and for the foreseeable future."  Dr. Q did note, however, that "[p]ossibly with further treatment, [Dumont's] condition could improve in the future."  (AR 226.)

---

[1] Dr. Q's response to the questionnaire is dated "1-4-11," but it must have been completed January 4, *2012*, both because (1) the electronic office visit notes show 1/4/2012, and (2) the 2012 date makes more sense in light of the date of his social security application.

In July 2012, it appears Dumont began treatment for his back pain at the VA hospital. In January 2013, Dumont reported taking prescription pain medications (gabapentin and tramadol) for back pain, but complained that they made him feel sick *and* did not help with pain. (AR 369.)

The medical record also contains an RFC completed by Pat Chan, M.D., dated July 25, 2011, in which he limits Dumont to: lifting and/or carrying no more than 10 pounds occasionally, and less than 10 pounds frequently; standing and/or walking for a total of 2 hours in an 8-hour workday; and sitting (with normal breaks) for no more than 6 hours in an 8-hour workday. (AR 282.) Dr. Chan also limited Dumont to stooping only occasionally. (AR 283.) Chan further found Dumont's reports to be "overall consistent with the objective findings and are considered fully credible." (AR 288.) Based on his review of the medical record, therefore, Chan limited Dumont to sedentary RFC with occasional stooping permitted. (AR 288.)

The ALJ held a hearing on January 22, 2013, and issued a decision on March 22, 2013, finding Dumont not disabled. At the same time, the ALJ found Dumont had degenerative disc disease, status-post hemilaminectomy and decompression. (AR 22.)[2]

Ultimately, the ALJ determined that Dumont had an RFC sufficient to perform "sedentary work . . . except occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and drawling; and avoid all exposure to hazards such as operational control of moving machinery and unprotected heights." (AR 23.) In doing so, the ALJ expressly discounted

---

[2] ALJ also considered whether Dumont's alcoholism constituted a severe impairment, but concluded that it did not, and Dumont does not challenge this.

4

Dumont's statements concerning the intensity and limiting effects of his symptoms because: (1) the notes from his physical exam reflect only "benign results"; (2) his treatment was "limited to pain management through epidural injections and oral medication"; (3) his MRI showed only "*minor*" or "*mild*" issues; (4) he failed to engage in other pain management treatment; (5) no physician has recommended a second spinal surgery; (6) daily activities are not as limited as one would expect; and (7) there are no other "pathological clinic signs, significant medical findings, or significant neurological abnormalities." (AR 24-25.)

In his treatment of medical opinions, the ALJ also placed little weight on the opinion of the State Agency physician, finding Dumont *more* functionally limited than Dr. Chan did. (AR 26.) The ALJ further gave little weight to Dr. Q, finding his opinion "inconsistent with the totality of the evidence, which showed only mild or minimal spinal impairments on objective imaging," and inconsistent "with the physical exams, which showed overall normal results." (AR 26.)

OPINION

As noted above, Dumont raises three core challenges to the Commissioner's finding of non-disability. The court begins with the evidence of side effects of Dumont's prescribed medications because that is grounds for remand all by itself.

I. Consideration of Side Effects

Under SSR 86-7p, the ALJ is required to consider "the type, dosage, effectiveness, and side effects of any medications the individual takes or has taken to alleviate pain and other symptoms," but failed to do so here. In particular, the ALJ makes no mention of

5

Dumont's extensive testimony at the hearing, and elsewhere in the administrative record, about the side effects of hydrocodone and other pain medications. (AR 59 ("Basically they take away the pain, but they also take away your day."; "I'll pop two of them in the morning, about a half hour . . . later or so you can feel something, . . . you're just getting doped up where you don't feel the pain, and then another half an hour you want to lay down and you're, I think, lethargic or foggy . . . like you're on dope is how I describe it. And it's miserable but I tried everything else over-the-counter and it just doesn't do [any]thing.").) In addition, Dr. Wolfe's contemporaneous treatment notes reflect that Dumont complained that hydrocodone made him feel "numb." (AR 227.)

In her opposition brief, the Commissioner argues simply that the ALJ pointed to evidence in the record demonstrating that he was aware of the plaintiff's use of prescription medication. (Def.'s Opp'n (dkt. #12) 9.) This same argument was reiterated during oral argument before this court, during which counsel for the Commissioner directed the court to the ALJ's description of Dumont's use of prescription medication in his decision. (*See* AR 25.) Critically, at that point in his decision, the ALJ relied on Dumont's use of prescription medication and his "reported excellent pain relief from prescribed medication" (*id.*) to discount Dumont's self-assessment of restrictions and limitations caused by the pain. At another point in the decision, the ALJ faulted Dumont for not doing more to manage his pain. (*Id.*)

Certainly, the court credits the Commissioner's argument that the ALJ cannot feasibly address all aspects of a claimant's testimony. Here, however, the ALJ *relied* on the fact that Dumont used prescription medication with favorable pain management results, while apparently ignoring Dumont's extensive testimony at the hearing, and

6

throughout the medical record, of both the negative side effects of prescription medication and his addiction issues. The ALJ's failure to address these side effects makes it difficult to assess whether those side effects might change the ALJ's assessment as to Dumont's overall physical capacity. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (requiring an ALJ to build a logical and accurate bridge between the evidence and his conclusion).

Moreover, this failure is material, contrary to counsel's apparent suggestion during the hearing before this court. While the ALJ found a sedentary RFC, Dumont's description of the side effects, which appear corroborated by at least some medical experts, calls into question his ability to work reliably. Not surprisingly, at the hearing, the Vocational Expert testified that employers will not tolerate an employee off task greater than 10 percent of the work period or one who had more than two unexcused or unscheduled absences per month. (AR 79.) As such, remand is warranted for further review and analysis on this basis alone even if not on the other bases asserted by Dumont.

## II. Treatment of Dr. Quenemoen's Opinion

Dumont also contends that the ALJ failed to address "the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, the supportability of the opinion, and the specialization of the treating source," all of which should be remanded for a further hearing on this basis.

(Pl.'s Opening Br. (dkt. #8) 11.)   In particular, Dumont takes issue with the ALJ's failure to adopt Dr. Q's lifting and carrying restriction of no more than 10 pounds.[3]

The ALJ's decision, however, demonstrates that he both:  (1) cited to the pertinent regulation, 20 C.F.R. § 404.1527(d),[4] setting forth several factors to consider in evaluating medical opinion evidence; and (2) more importantly, *did* consider several of the pertinent factors, noting expressly that Dr. Q completed a one-time examination and submitted a report for the purpose of the current appeal, as well as describing Dr. Q's findings in light of the medical record as a whole.  With the exception of failing to note Dr. Q's specialty in occupational medicine, this discussion is sufficient to meet the requirements of the regulation.

As to that one oversight, plaintiff fails to explain why his specialty would have so weighed in favor of the ALJ placing more weight on Dr. Q's opinion.  While the Seventh Circuit has held that remand is required when an ALJ has "said nothing regarding this required checklist of factors," *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (quotation marks and citation omitted), remand is not necessarily warranted when the ALJ failed to address *one* factor.  Or at least, plaintiff has failed to either (1) describe the unique importance of that factor, or (2) direct the court to any case law in support of requiring remand based on failing to mention a physician's specialty alone.

Second, Dumont argues that the ALJ's conclusion that his physical exams were normal is inconsistent with the totality of evidence as described by Dr. Q.  Specifically,

---

[3] The 10-pound restriction may be material in terms of removing Dumont from the sedentary work RFC, but this, too, is not clear from the parties' briefing.

[4] The ALJ also cited to 20 C.F.R. § 416.927(d), which sets for the same factors for evaluating opinion evidence for purposes of a SSI application.

Dumont points to his history of prior low back surgery, epidural injections, MRI scan, and use of prescription medication. The ALJ acknowledged the MRI results, but focused on the findings of "mild" or "minor" abnormalities. (AR 24-25, 26.) The court also finds no fault in the ALJ's treatment of the MRI.

What is at least arguably concerning is the ALJ's rejection of Dr. Q's opinion in part because of the conclusion that the physical exams "showed overall normal results." (AR 26.) While some of the medical records showed "tenderness to palpation" (AR 247, 253), the court does not find the ALJ's discounting of Dr. Q's opinion in light of the medical record as a whole to be in error.

Finally, Dumont takes issue with the ALJ's mention that Dr. Q's examination "was not an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal." (AR 26.) Dumont points out that Dr. Q's report was not paid for by his counsel, and that the examination was requested by Dr. Wolfe, not by Dumont's attorney. (Pl.'s Opening Br. (dkt. #8) 12.) Any error by the ALJ in characterizing the nature of Dr. Q's exact involvement, however, is not a basis for remand, especially in light of the merit of the ALJ's general concern that Dr. Q's involvement was limited to evaluating Clark's condition for purposes of securing social security benefits.

While any one of the ALJ's arguable faults in the treatment of Dr. Q's opinion is not enough to warrant a remand, there is still the question whether the cumulative impact of the three faults is enough to warrant a remand. While the court is disinclined to think so, it need not reach the issue here, other than to encourage the ALJ to give a

full and fair treatment to Dr. Q's opinion generally on the required remand for other reasons.

### III. Appeals Council's Treatment of Dr. Hebl's Letter

Finally, while Dumont's appeal was pending before the Appeals Council, he submitted a worker's compensation injury report, dated June 6, 2013, by Joseph T. Hebl MD, JD. (*See* dkt. #8 at 22-31.) In his brief, Dumont represents that the Appeals Council failed to acknowledge this new evidence. Without explanation, Dumont also maintains that this evidence relates to the period on or before the ALJ issued his decision on March 22, 2013. (Pl.'s Opening Br. (dkt. #8) 14.) The latter representation no doubt is intended to satisfy the pertinent regulation, which provides in relevant part that:

> (b) If new and material evidence is submitted, the Appeals Council shall consider the additional evidence *only where it relates to the period on or before the date of the administrative law judge hearing decision*. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 CFR § 404.970 (emphasis added).

As the Commissioner points out, however, the Appeals Council *did* acknowledge Dr. Hebl's report, but concluded that:

> This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 22, 2013. If you want us to consider whether you were disabled after March 22, 2013, you need to apply again.

(AR 1-2.)  In so holding, the Appeals Council determined that Dr. Hebl's report was not "time relevant," a holding that this court reviews *de novo* for legal error.  *See Stepp v. Colvin*, 795 F.3d 711, 723-25 (7th Cir. 2015) (citing *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012)) (describing standard of review if Appeals Council finds the evidence to be "non-qualifying under the regulation" versus the standard of review if the Appeals Council considers it but finds that it does not change the finding of no disability).[5]

The critical question then is whether a report which post-dates the ALJ's decision, but which is based on a review of the medical record *before* the ALJ's decision date, "relates to the period on or before the date of the administrative law judge hearing decision"?  At least in his reply, plaintiff's counsel recognizes this issue, but fails to direct the court to any cases explaining the meaning of "relates to" under the pertinent regulation.  In her opposition brief, the Commissioner entirely misses the point of this argument.  In its own review, the court could find no Seventh Circuit or Wisconsin District Court cases that addressed this particular requirement in the regulation.  Instead, most of the cases deal with whether the evidence is new and/or material.

Even if the court were to find error, remand would not be warranted if the error is harmless.  *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[A]dministrative error may be harmless."); *Sanchez v. Barnhart*, 467 F.3d 1081, 1082-83 (7th Cir. 2006) ("[I]n administrative as in judicial proceedings, errors if harmless do not require (or indeed permit) the reviewing court to upset the agency's decision.").  While Dr. Hebl limits Dumont to sedentary activity with additional restrictions consistent with the ALJ's

---

[5] While neither side addressed the proper standard, the Commissioner agreed that *de novo* review was the appropriate standard during argument before the court.

RFC finding, he also adds a lifting restriction of "no more than 10 pounds on a no more frequent than occasional basis," and that he "should only occasionally stand, walk, or sit and should change position every 15 minutes." (Dkt. #8 at 29.) Dumont, however, fails to explain how and whether these additional restrictions would render him disabled.

In the end, the court need not resolve this challenge either. In light of the decision to remand based on the ALJ's failure to consider side effects of medications as described above, the ALJ should also consider the Dr. Hebl report.

ORDER

Accordingly, IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Edward A. Dumont's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 7th day of March, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge